UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NORMAN GRAY,** | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 3:26-1732** |
| **v.** | : | **(JUDGE MANNION)** |
| **WARDEN, FCI ALLENWOOD LOW,** | : | |
| **Respondent** | : | |

## MEMORANDUM

Currently before the Court is Norman Gray ("Gray")'s petition for a writ of habeas corpus under 28 U.S.C. §2241. For the reasons stated below, the Court will dismiss Gray's petition without prejudice due to his failure to exhaust his administrative remedies.

## I. BACKGROUND

### A. Gray's Underlying Federal Criminal Proceedings

On March 3, 2025, Gray was sentenced to one hundred and twenty months of federal confinement, to be followed by three years of supervised release, after a jury sitting in the United States District Court for the Southern District of New York ("SDNY") found him guilty of wire fraud (18 U.S.C. §1343) on March 29, 2024. *See United States v. Gray*, No. 21-cr-713

(S.D.N.Y.) ("*Gray*"), ECF Nos. 139, 213, 217.[1] Gray timely filed an appeal from his criminal judgment to the Second Circuit Court of Appeals, *see id.*, ECF No. 214), which is still pending before the Second Circuit. *See* Docket, *United States v. Gray*, No. 25-538 (2d Cir.).

On June 4, 2025, the SDNY issued a restitution order totaling $1,533,675. *See Gray*, ECF No. 227. On October 2, 2025, the SDNY issued an Order directing the Clerk of Court to transfer or otherwise apply $50,000 deposited in the SDNY's registry to secure Gray's appearance bond towards satisfying his outstanding restitution obligation. *See id.*, ECF No. 237. Gray moved for reconsideration of this Order, which the SDNY denied as frivolous on October 27, 2025. *See id.*, ECF Nos. 238, 239. Gray also appealed from the Order denying his motion for reconsideration, *see id.*, ECF No. 240, and this appeal remains pending before the Second Circuit. *See* Docket, *United States v. Gray*, No. 25-2881 (2d Cir.).

---

[1] The Court takes judicial notice of the docket entries in Gray's underlying criminal case and any related appellate proceedings. *See Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) (unpublished) ("We may take judicial notice of the contents of another Court's docket."). Additionally, the Court notes that even though the SDNY did not enter Gray's criminal judgment until March 3, 2025, Gray's sentencing hearing occurred on February 20, 2025. *See Gray*, ECF No. 213 at 1 (identifying date sentence imposed).

On January 23, 2026, Gray filed a *pro se* "Motion for Appointment of New Counsel and Time to Reconsider Restitution," *see Gray*, ECF No. 241, which the SDNY denied a week later. *See id.*, ECF No. 242. Gray appealed from this denial to the Second Circuit, *see id.*, ECF No. 243, and this third appeal remains pending with the Second Circuit. *See United States v. Gray*, No. 26-383 (2d Cir.).

On June 23, 2026, Gray filed a motion for return of property, which the SDNY denied on July 7, 2026. *See Gray*, ECF Nos. 256, 259. Gray has also appealed this determination to the Second Circuit, *see id.*, ECF No. 260, and this fourth appeal remains pending with the Second Circuit. *See United States v. Gray*, No. 26-2056 (2d Cir.).

**B. Gray's Section 2241 Habeas Petition**

Gray, who is currently incarcerated at Federal Correctional Institution Allenwood Low ("FCI Allenwood Low") and has an anticipated release date of December 8, 2032, according to the Federal Bureau of Prisons ("BOP")'s Inmate Locator (https://www.bop.gov/mobile/find_inmate/index.jsp), commenced the instant action by filing his Section 2241 petition, which the Clerk of Court docketed on June 22, 2026. (Doc. 1.) Gray did not remit the filing fee or apply for leave to proceed *in forma pauperis* when he filed his petition; as such, an Administrative Order issued requiring him to either pay

the fee or file an application for leave to proceed *in forma pauperis.* (Doc. 3.) On July 7, 2026, Gray timely remitted the filing fee. (Doc. 4.)

In his Section 2241 habeas petition, Gray asserts that the Federal Bureau of Prisons ("BOP") is unlawfully assessing him restitution payments pursuant to the Inmate Financial Responsibility Program ("IFRP"). *See* (Doc. 1 at 1–2). He alleges that he earns approximately $20 per month due to his "chapel job," and he is otherwise dependent on his family for other financial commitments while incarcerated. *See* (*id.* at 1). Yet, Gray's case manager at FCI Allenwood Low "informed him that because of the small stipend support from his family, [he] is required to pay" through the IFRP. (*Id.*) Gray asserts that he had to pay $20 per quarter at first, but then the case manager increased the amount to $200 per month. *See* (*id.*). The case manager also "asked Gray to sign an acceptance" and told him that if he did not sign it, "it would be documented as a "Refusal [sic]." (*Id.*) Gray apparently signed the agreement but "with a notation that he is not refusing to make payments . . .[;] rather[,] he is unable to afford the payment." (*Id.*); *see also* (Doc. 1-2 at 2).

For the first IFRP collection in May 2026, the BOP took $27.97 from Gray's account, which was all his available funds at the time. *See* (Doc. 1 at 2). Then, on June 9, 2026, Gray was "summoned" to see the case manager,

"who advised him that she was reducing the amount to $150[,] and if he did not have funds to pay, he would be 'put into refusal' where he would lose all his earned [First Step Act ("FSA")] benefits." (*Id.*) Gray asserts that he again told her that he was unable to pay the required amount, and the case manager "simply snickered" in response. (*Id.*)

Gray appears to argue that the case manager's actions regarding his IFRP payments are improper in four respects. First, he asserts that the BOP should not have initiated an IFRP because the SDNY's restitution Order is "not final" insofar as he is still challenging it on appeal. *See* (*id.*). Second, he contends that the BOP lacks authority to withhold payments because the SDNY did not establish a payment schedule during his incarceration as part of his criminal judgment. *See* (*id.*). He argues that the Mandatory Victims Restitution Act, 18 U.S.C. §3663A ("MVRA") does not allow a sentencing court to "simply order immediate restitution [and] delegate[] the details of 'how' or 'how much' is withheld to the [BOP] without consider[ing] the [defendant's] ability to pay." (*Id.*) According to Gray, the sentencing court must set a specific schedule for restitution payments in the criminal judgment if the court intends to require a defendant to make restitution payments during their incarceration. *See* (*id.*). Because that did not happen here, Gray believes that the BOP's actions regarding his IFRP are unlawful. *See* (*id.*).

Third, Gray contends that the BOP cannot designate him as refusing to participate in the IFRP and "punish[]" him accordingly because his inability to pay does not constitute a refusal. (*Id.*) Gray indicates that "economic impossibility is not the same as willful refusal; fiduciary or penal consequences (like being placed in 'refusal') cannot be enforced if one shows financial inability." (*Id.*) Fourth, and finally, Gray argues that the BOP has violated his due process rights by "withhold[ing] a large sum [of money] without [providing him with an] opportunity to contest [his] ability to pay." (*Id.*) Gray believes that "one has a liberty interest in certain prison privileges," so any placement in "refusal status" that "triggers [the] loss of guaranteed privileges" implicates a person's procedural due process rights. (*Id.*)

For relief, Gray seeks and Order (1) declaring that "the BOP/Warden lacks the authority to withhold $150/month absent a valid schedule in the sentencing judgment considering [his] ability to pay"; (2) stopping the "BOP/Warden [from] categorizing [him] as [a] 'refusal' or penalizing [him] for his inability to pay"; and (3) directing the BOP to "modif[y his] withholding to the original $20/quarter." (*Id.*) He also asks the Court to "forgive any errors in []his pro se [m]otion." (*Id.*)

On July 13, 2026, the Court issued an Order which, *inter alia*, directed Respondent to file a response to Gray's Section 2241 habeas petition. (Doc.

5.) Respondent timely filed a response to Gray's petition on August 3, 2026. (Doc. 7.) In this response, Respondent argues that the Court should (1) dismiss Gray's petition because he failed to exhaust his administrative remedies or (2) deny the petition because the BOP is properly assessing Gray under the IFRP. *See* (Doc. 7 at 7–15).

Gray filed a reply brief in further support of his habeas petition, which the Clerk of Court docketed on August 24, 2026. (Doc. 8.) In his reply, Gray argues that, *inter alia*, he did not need to fully exhaust his claims in this case because he would suffer "imminent harm" insofar as his misclassification as a IFRP refusal causes him to lose FSA privileges such as spending limits and free phone minutes, which prejudices him in "fighting his six . . . civil [cases]." (*Id.* at 1). He also asserts that he will not be able to afford copy cards or use the Trulinks email application to type and prepare legal documents. *See* (*id.*). He further contends that the BOP's decision to designate him as "refusing to pay" under the IFRP prejudices his ability to litigate his six civil actions. *See* (*id.*).

## II. LEGAL STANDARD

Under Section 2241, habeas relief may be extended to a federal prisoner only when they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(3). Pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, applicable to Section 2241 petitions through Rule 1(b), this Court has the authority to dismiss a habeas petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." R. 4, 28 U.S.C. foll. §2254; *see* R. 1(b), 28 U.S.C. foll. §2254 ("The district court may apply any or all of these rules to a habeas corpus petition not [involving a petition under 28 U.S.C. §2254]."); *see also Heath v. Bell*, 448 F. Supp. 416, 417 (M.D. Pa. 1977) (noting that Rule 1(b) of the Rules Governing Section 2254 Habeas Petitions in the United States District Courts renders Rule 4 applicable to Section 2241 habeas petitions). Thus, a district court is "authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (citing R. 4, 28 U.S.C. foll. §2254).

Section 2241 confers federal jurisdiction over a habeas petition that has been filed by a federal inmate challenging "not the validity but the execution of [their] sentence." *Cardona v. Bledsoe*, 681 F.3d 533, 535 (3d

Cir. 2012) (citations and footnote omitted); *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241 (3d Cir. 2005) (stating that Section 2241 “allows a federal prisoner to challenge the ‘execution’ of his sentence in habeas”). While “the precise meaning of ‘execution of the sentence’ is hazy[,]” the phrase has been interpreted as to “put into effect” or “carry out.” *Woodall*, 432 F.3d at 242, 243 (citation omitted). As a result, a federal inmate may challenge conduct undertaken by the BOP that affects the duration of the inmate’s custody. *See, e.g.*, *Barden v. Keohane*, 921 F.2d 476, 478–79 (3d Cir. 1990) (finding that a federal inmate’s Section 2241 petition is actionable where the inmate attacks the term of their custody by challenging the manner in which the BOP is computing their federal sentence); *United States v. Vidal*, 647 F. App’x 59, 60 (3d Cir. 2016) (unpublished) (“Because [the federal inmate’s] claim challenges the BOP’s calculation of sentence credits, it is appropriately addressed in a petition for a writ of habeas corpus pursuant to [Section] 2241” (citation omitted)).

Unlike with Section 2254 habeas petitions and Section 2255 motions, there is no explicit statutory exhaustion requirement for Section 2241 habeas petitions. *See Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) (“[T]here is no statutory exhaustion requirement attached to §2241[.]”). Nevertheless, the Third Circuit Court of Appeals has “consistently applied an exhaustion

requirement to claims brought under §2241." *Id.* (citations omitted). Exhaustion "allow[s] the appropriate agency to develop a factual record and apply its expertise[,] . . . conserves judicial resources[,] and . . . provide[s] agencies the opportunity to correct their own errors [which] fosters administrative autonomy." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761–62 (3d Cir. 1996) (citations omitted).

Exhaustion is the rule in most cases, and failure to exhaust will generally preclude federal habeas review. *See Eiland v. Warden Fort Dix FCI*, 634 F. App'x 87, 89 (3d Cir. 2015) (unpublished) (explaining that "exhaustion is a precondition to bringing suit" and summarily affirming district court's dismissal of Section 2241 petition due to petitioner's failure to exhaust). Only in rare circumstances is exhaustion of administrative remedies not required. For example, exhaustion is unnecessary if "the issue presented involve[s] only statutory construction." *Vasquez v. Strada*, 684 F.3d 431, 433–34 (3d Cir. 2012) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Similarly, exhaustion is not required "if an attempt to obtain relief would be futile or where the purposes of exhaustion would not be served." *Cerverizzo v. Yost*, 380 F. App'x 115, 116 (3d Cir. 2010) (unpublished); *see also Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (explaining that "[a]n exception is made [to the exhaustion requirement] only

if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief").

Concerning exhaustion within the BOP, it has an Administrative Remedy Program through which federal prisoners can request review of nearly any aspect of their imprisonment. *See* 28 C.F.R. §542.10(a) ("The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."). Specifically, the BOP has a four (4)-step administrative process through which an inmate can address issues concerning the conditions of their confinement. *See id.* §542.13(a)–15(a). Except in circumstances inapplicable here, an inmate must first informally present the complaint to staff, who must attempt to informally resolve the matter. *See id.* §542.13(a) ("Except as provided in §542.13(b), an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy."). If the informal resolution is unsuccessful, then the inmate must execute the appropriate form (BP–9) to bring the matter to the attention of the Warden, within twenty (20) calendar days of the date of the incident. *See id.* §542.14(a) ("The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the

appropriate form (BP–9), is 20 calendar days following the date on which the basis for the Request occurred."). If the inmate is dissatisfied with the Warden's response, they may then appeal to the Regional Director within twenty (20) calendar days. *See id.* §542.15(a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP–10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response."). The inmate may then, if dissatisfied with the Regional Director's response, appeal to the General Counsel at the BOP's Central Office within thirty (30) calendar days. *See id.* ("An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP–11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response."). This is the final administrative appeal level in the BOP, and no administrative appeal is considered to have been fully exhausted until considered by the BOP's General Counsel. *See id.* ("Appeal to the General Counsel is the final administrative appeal."); *see also Redmond v. Dortch*, 823 F. App'x 266, 267 (5th Cir. 2020) (unpublished) ("Redmond did not fully exhaust his remedies because he never completed the fourth and final step of appeal to the Office of General Counsel.").

## III. DISCUSSION

The Court will dismiss Gray's habeas petition without prejudice due to his failure to exhaust his administrative remedies. Respondent has produced evidence showing that Gray failed to exhaust his administrative remedies prior to filing his habeas petition, *see* (Docs. 7-2–7-6), and Gray concedes that he failed to exhaust his administrative remedies. *See* (Doc. 8 at 1). However, he argues that the Court should excuse his failure to exhaust because he will suffer "imminent harm" without habeas relief. *See* (*id.*).

Habeas petitioners such as Gray may seek to have administrative exhaustion excused "if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm." *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988).[2] However, Gray fails to make such a showing here. He has not clearly demonstrated that the BOP's administrative procedure is inadequate to prevent irreparable harm. Moreover, while he claims that he is suffering from, and will suffer from, certain harm, such as certain spending

[2] Other than "imminent harm," Gray does not identify any excuse for his failure to exhaust. *See* (Doc. 8 at 1). As such, the Court does not address any other possible excuse in this Memorandum. *See Estrella v. Warden FCI Lewisburg*, No. 26-cv-61, 2026 WL 800954, at *2 (M.D. Pa. Mar. 23, 2026) ("Although the respondent has the initial burden to establish failure to exhaust administrative remedies, once the respondent has done so the petitioner generally must demonstrate an exception or excuse that would allow [them] to proceed without exhausting administrative remedies." (citations omitted)).

limits, the loss of free phone minutes, an inability to afford copy cards, and an inability to use the email application on Trulinks to prepare legal documents, he fails to show that such harm is "irreparable." *See Irreparable*, Black's Law Dictionary (12th ed. 2024) (defining "irreparable" as "[i]ncapable of being rectified, restored, remedied, cured, regained, or repaired; that cannot be made right or good").

The Court notes that Gray contends that his IFRP refusal status, and the "subsequent loss of FSA privileges, . . . prejudices [him] in fighting his six civil [cases]." (Doc. 8 at 1.) He also asserts that "[t]he Court's attention to this matter is dire to [his] ability to conduct a reasonable defense in his pending civil cases with strict date requirements." (*Id.*) However, he does not articulate the manner he is prejudiced in litigating his civil cases in anyway whatsoever. His refusal status certainly has not prejudiced him in this case or in his other two civil cases which have been assigned to the undersigned. *See Gray v. Warden FCI Allenwood Low*, No. 26-cv-2603 (M.D. Pa.); *Gray v. Warden FCI Allenwood Low*, No. 26-cv-1432 (M.D. Pa.). He also does not articulate any facts that he would be unable to seek an extension of time should he have any issues meeting deadlines in his other civil cases. Overall, it is improper for Gray to fail to exhaust his administrative remedies due to purported imminent harm, as most habeas petitioners argue that they are

experiencing some type of present harm due to some aspect of their continued incarceration, and federal courts still require exhaustion except in "rare circumstances." *Mitchell v. Warden FPC Lewisburg*, No. 26-cv-147, 2026 WL 2731263, at *1 (M.D. Pa. Sept. 16, 2026). Accordingly, Gray has not shown that the Court should excuse his failure to exhaust his habeas claims in this case and will dismiss his petition without prejudice to him filing a new petition once he fully exhausts his administrative remedies with the BOP.

## IV. CONCLUSION

For the reasons stated above, the Court will dismiss Gray's Section 2241 habeas petition without prejudice due to his failure to exhaust. An appropriate Order follows.

**MALACHY E. MANNION**
**United States District Judge**

**DATE: October 12, 2026**
26-1732-01